AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| KEJUAN CAMPBELL | ) |
|   a/k/a "Splashzanotti" | ) Case No.  20-mj-6653-AOV |
|   a/k/a "Splashzanoti" | ) |
| ANTOINE JAMES | ) |
|   a/k/a "Yung Fokiss," and | ) |
| DIONTE ALEXANDER-WILCOX | ) |
|   a/k/a "Dionte Alexander" | ) |
|   a/k/a "TrapSavage45." | ) |
| Defendant(s) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  09/11/2020, 10/11/2020, 10/12/2020  in the county of  Broward  in the
Southern  District of  Florida  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1201(c) | Conspiracy to Kidnap |
| 18 U.S.C. §§ 1201(a), 2 | Kidnapping |
| 18 U.S.C. § 922(g)(1) | Possession of a Firearm by a Convicted Felon (Dionte Alexander-Wilcox) |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Christopher Adam Goodrich, FBI Special Agent
Printed name and title

Sworn to before me and signed in my presence in accordance to
the requirements of Fed. R. Crim. P. 4.1 by  Facetime          .

Date:  December 15, 2020

_____
Judge's signature

City and state:  Fort Lauderdale, Florida

Alicia O. Valle, United States Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Christopher Adam Goodrich, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent for the Federal Bureau of Investigation ("FBI"), currently assigned to the Violent Crimes and Fugitive Task Force in the Miami Division. I have been an FBI Special Agent since June 2016 and assigned to the Miami Division since November 2016. Prior to my assignment to the Violent Crimes and Fugitive Task Force, I was assigned to the Violent Crimes Against Children Squad for two (2) years. I received training at the FBI Academy in Quantico, Virginia. In my current capacity, my duties include investigating bank robberies, Hobbs Act robberies, extortion, and other violations of federal law. Prior to my current employment, I worked as a Police Officer in Norfolk, Virginia, for nine (9) years.

2. Based on the facts as set forth in this affidavit, there is probable cause to believe that KEJUAN CAMPBELL a/k/a "Splashzanoti" a/k/a "Splashzanotti," ANTONIO JAMES a/k/a "Yung Fokiss," and DIONTE ALEXANDER-WILCOX a/k/a "Dionte Alexander" a/k/a "Trapsavage45" have committed violations of Title 18, United States Code, Sections 1201(c) (conspiracy to kidnap); 1201(a)(1) and 2 (kidnapping). It is also alleged that ALEXANDER-WILCOX violated Title 18, United States Code, Section 922(g)(1) (possession of a firearm by a convicted felon).

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

### *October 11, 2020*

4. On or about October 11, 2020, at approximately 3:30 pm, Victim-1 answered a knock at the front door of her residence, located in Miramar, Florida. She looked out the window and saw an unknown black male believed to be Dionte Alexander-Wilcox ("Alexander-Wilcox").[1] After Victim-1 inquired what he wanted, Alexander-Wilcox stated that he wanted to talk to "Anthony," in reference to Victim-1's nephew.[2] Victim-1 advised that Anthony did not reside at her residence. Alexander-Wilcox then asked Victim-1 to telephone her nephew so he could talk to him. Victim-1 tried to explain that she did not have Anthony's telephone number but Alexander-Wilcox claimed that he could not hear her through the window. As soon as Victim-1 opened the front door, Alexander-Wilcox pulled out a firearm, placed the barrel on her forehead, and pushed her inside the home. Another masked individual – believed to be Kejuan Campbell a/k/a "Splashzanotti" a/k/a "Splashzanoti" – quickly joined Alexander-Wilcox inside the residence. They ordered Victim-1 to the ground. Immediately after Victim-1 was on the ground, another masked individual – believed to be Antonio James a/k/a "Yung Fokiss" – entered the residence, proceeded to the bathroom, and struck Victim-1's husband ("Victim-2") in the head with an unknown object, possibly a firearm. James then brought Victim-2 into the living room, forced him to the floor, and kicked him in the face. Campbell, James, and Alexander-Wilcox were all masked and armed with firearms.

---

[1] Because Alexander-Wilcox and the other two assailants (Kejuan Campbell and Antonio James) wore masks and were otherwise unfamiliar to the victims, law enforcement asked Victim-1 and Victim-2 to identify each individual by their attire and any other distinguishing characteristics. Once this occurred, law enforcement marked each assailant by either a number or nickname in order to ensure that all parties knew who committed what act.

[2] Victim-1 had not seen Anthony in years.

2

5.  While both victims were on the ground, Campbell told them that "Anthony" had stolen twenty thousand dollars ($20,000.00) from him and the three masked subjects were going to collect it back from Anthony's closest family members.[3] Campbell subsequently ordered Victim-1 to contact her bank, SunTrust Bank, and transfer twenty thousand dollars ($20,000.00) from the joint savings account that she shared with Victim-2 to the joint checking account. Once the transfer occurred, Campbell took Victim-1's phone and installed Cash App, an internet-based money transfer application, onto it without her permission.[4] Campbell and the other subjects attempted numerous times to transfer money from the joint checking account into an account registered to Antonio James but were unsuccessful.

6.  At an unknown time but prior to 8:00 pm, Campbell forced Victim-1 to write five (5) personal checks from the joint checking account. Four of the checks were for five thousand dollars ($5,000.00) apiece and one check was for twenty thousand dollars ($20,000.00). The "Payable To" section on each check remained blank. Campbell then took the checks and drove to Amscot, located at 314 N. University Drive, Pembroke Pines, Florida. While there, Campbell attempted to cash the four $5,000.00 checks. Amscot declined to process any of the checks. Campbell then returned to the residence and ordered Victim-1 into the passenger seat of a white four-door Nissan Altima (the "Vehicle").[5] Campbell then drove to the same Amscot and entered

---

[3] At the time of the events described above, Anthony's stepfather resided approximately two (2) miles from Victim-1 and Victim-2's residence.

[4] The phone number associated with the Cash App transactions was 754-201-3894. A public records search showed that 754-201-3894 is leased to Pinger, Inc. ("Pinger"), a provider of Voice Over Internet Protocol (VOIP) telephone numbers. Law enforcement submitted an exigent request to Pinger, which reported that the phone number in question bore the username "prodigyantoniojames" and listed prodigyantoniojames@gmail.com as the email address.

[5] Nissans are manufactured wholly or in part outside of the state of Florida.

3

it with Victim-1. While attempting to cash the checks, Campbell completed the "Financial Services Agreement" by listing his actual name, date of birth, and social security number.[6] He also provided a copy of his Florida driver's license. Amscot again declined to process the checks. Campbell also attempted to cash the $20,000.00 check but that also failed.

7. At approximately 8:19 p.m., Campbell and Victim-1 left the Amscot and proceeded to the Publix located at 600 N. University Drive, Pembroke Pines, Florida. Campbell and Victim-1 entered the store and walked towards the customer service desk. Upon reaching the counter, Campbell attempted to use Victim-1's SunTrust Debit Card to purchase money orders totaling $20,000.00. Publix denied the transaction. Campbell was angry and frustrated due to the failed attempts. Victim-1 observed Campbell repeatedly using his cellphone during this time.[7]

8. Because Campbell, James, and Alexander-Wilcox were unsuccessful at obtaining the requisite $20,000.00, they decided to remain at the victims' residence overnight. During this time, they ate the victims' food, drank their liquor, and watched television. They restricted the victims' movements throughout the house, and their access to telephones and the internet.

### *October 12, 2020*

9. On or about October 12, 2020, sometime after midnight, Victim-2 made a request to smoke a cigarette. Campbell granted the request and subsequently escorted Victim-2 to the

---

[6] The phone number listed on the agreement belongs to Victoria Johnson, who is the mother of Campbell's child.

[7] Based on Call Detail Records associated with Campbell's phone, both Campbell and James were in communication with one another during the times in which Campbell left the residence with Victim-1 in Campbell's attempt to obtain the $20,000.00 from the various commercial establishments. In your affiant's training and experience, individuals who plan for and execute a kidnapping often maintain communication with one other, either through telephone calls or text messaging, to apprise the other participants of their whereabouts and the success or failure of other criminal acts done during the commission of the kidnapping.

4

garage so that they could smoke. While Victim-1 remained inside, one of the masked subjects[8] sat next to her on the sofa, lowered his pants, and exposed his penis. With a firearm in his hand, the masked subject directed Victim-1 to perform oral sex on him. In fear for her and Victim-2's lives, Victim-1 complied. While still holding the firearm, the masked subject stood up and directed Victim-1 to go into the master bedroom. Still in fear, Victim-1 complied. Once inside, the masked subject forcibly raped Victim-1 on top of the bed. The masked subject was not wearing a condom at the time. He then directed Victim-1 to go into the bathroom and shower. After Victim-1 showered, she and the masked subject returned to the living room.

10.     At approximately 8:55 am, Campbell ordered Victim-1 into the passenger side of the Vehicle. Campbell and Victim-1 proceeded to the SunTrust Bank, located at 8250 Miramar Parkway, Miramar, Florida, in order to withdraw money from the joint checking account. Upon arriving, Campbell realized that the bank was closed. Campbell then drove to the SunTrust Bank, located at 10000 Taft Street, Pembroke Pines, Florida, but also found this location to be closed. Campbell got angry and frustrated. He began using his cellphone to conduct an online search to determine why the banks were closed. It was then that he realized that it was Columbus Day, a federal holiday.

11.     At approximately 9:54 am, Campbell and Victim-1 arrived at the Miami Casino, located at 3500 NW 37th Avenue, Miami, Florida. They entered the casino and proceeded to the cashier's window. While at the cashier's window, Campbell attempted to use Victim-1's

---

[8] Based on the descriptions that Victim-1 provided for each assailant, Victim-1 appeared to have identified the assailant believed to be Antonio James as the rapist; however, the results of the DNA analysis show that only Alexander-Wilcox's sperm was on the bed comforter on which the rape occurred (see Paragraph 17). In your affiant's training and experience, it is not uncommon for victims of sexual assault to have difficulty recalling certain details, particularly when there were multiple masked assailants.

5

SunTrust Debit Card to obtain $20,000.00 in cash. The Miami Casino declined the transaction because the amount exceeded the casino's $2,000.00 threshold.

12.     Between approximately 10:16 am and 10:30 am, Campbell and Victim-1 proceeded to the Walmart, located at 3200 NW 79th Street, Miami, Florida, and attempted to use Victim-1's SunTrust Debit Card to obtain $20,000.00 in cash. Walmart declined the transaction. After leaving Walmart, Campbell told Victim-1 that he did not like something that Victim-2 said during the smoke break earlier that day (see Paragraph 9.[9] He added that one of the subjects back at the residence with Victim-2 was a "killer" who had killed in the past. This caused Victim-1 to break down. Campbell and Victim-1 then returned to the residence.

13.     While at the residence, Campbell directed Victim-1 to place a telephone call to SunTrust Bank and increase her ATM withdrawal limit. After the bank authorized the increase, Campbell drove Victim-1 to various SunTrust Banks in the Vehicle. Below is a summary of the SunTrust ATM locations, time, and transaction:

- October 12, 2020, between 11:15 am to 11:28 am, SunTrust Bank, 8250 Miramar Parkway, Miramar Florida. Three (3) withdrawals totaling $2,100.00. Bank surveillance was not functioning.
- October 12, 2020, between 11:50 am to 11:58am, SunTrust Bank, 10000 Taft Street, Pembroke Pines, Florida. Five (5) withdrawals totaling $3,700.00. Captured on bank surveillance.
- October 12, 2020, between 12:13 pm to 12:38pm, SunTrust Bank, 4475 S Flamingo Road, Davie, Florida. Twenty (20) withdrawals totaling $15,800.00. Captured on bank surveillance.

---

[9] Victim-2 had told Campbell that he disagreed with the decision to rob him and Victim-1 for something that Anthony did.

6

Campbell had a firearm with him during each transaction and kept it on his person. A still image taken during the SunTrust Bank transaction in Davie, Florida, displayed an individual bearing similar features to Campbell, specifically the tattoos near each eye and a horizontal scar on his forehead (see below):[10]

Campbell        SunTrust ATM (Davie)



A review of the surveillance footage confirmed that the Vehicle was a white Nissan Altima.[11]

14. After successfully completing the ATM withdrawals, Campbell and Victim-1 returned to the residence. Campbell, James, and Alexander-Wilcox began cleaning the residence, even directing the victims to participate. During the cleanup, the assailants placed multiple clothing items, jewelry, and liquor bottles in two (2) black suitcases that belonged to the victims. Campbell, James, and Alexander-Wilcox subsequently erased the footage from the surveillance

---

[10] The photograph on the left was derived from Campbell's Florida driver's license.

[11] On October 12, 2020, a license plate reader (LPR) detected a 2017 white Nissan Altima bearing Florida license plate JYES18 approximately a half mile away from the SunTrust Bank in Miramar, around the time that Campbell completed the ATM transactions at this location. The registered owner of the vehicle is Victoria Johnson, who is believed to be the mother of Campbell's child and whose VOIP telephone number Campbell listed on the Financial Services Agreement during the attempted Amscot transactions.

7

system, removed the visible surveillance camera from the southwest corner of the residence, and tampered with the surveillance camera that was near the middle of the residence. They told the victims that their vehicle keys, cellphones, bankcards, and social security cards were in the garage. That afternoon, Campbell, James, and Alexander-Wilcox left the residence with the two black suitcases. Before leaving, they warned the victims not to call law enforcement or harm would come to them.

15. After the assailants had departed from the victims' residence, James used his cellphone[12] to record a video of Campbell sitting in the driver seat of a vehicle counting the money from one of two large stacks of United States currency. In the backseat of the vehicle is Alexander-Wilcox. While taking the video, James stated, "Don't worry. I ain't posting this." Images from the video are shown below:

[INTENTIONALLY LEFT BLANK]

---

[12] On or about November 18, 2020, law enforcement seized James' cellphone from his possession at the time of his arrest for violating his pretrial release on pending state charges. While on scene, James confirmed that the cellphone belonged to him. After executing a federal search warrant on the cellphone (20-6605-HUNT), law enforcement observed the aforementioned video.

On or about November 24, 2020, law enforcement executed a federal search warrant on James' iCloud account (20-6613-VALLE). The account also contained a copy of the video depicted above. The account also contained photographs of both Victim-1 and Victim-2 on or near the floor of their residence at the time that the assailants first made entry.

8

| Kejuan Campbell | One Stack | Dionte Alexander-Wilcox |
|---|---|---|
|  |  |  |

Importantly, Campbell appears to be wearing the same sweatshirt, mask and hat that he wore when he withdrew money from the SunTrust ATM in Davie, Florida (see Paragraph 13).

### *October 13, 2020*

16. On or about October 13, 2020, law enforcement recovered an abandoned black suitcase at 4100 NW 77 Ave, Davie, Florida.[13] The suitcase contained numerous items belonging to the victims and an identification card belonging to the victims' family member. This appeared to be one of the suitcases taken by Campbell, James, and Alexander-Wilcox. Law enforcement provided Victim-1 and Victim-2 with a photograph of the suitcase and its contents. They confirmed that the suitcase and contents belonged to them.

---

[13] A police report from 2019 identified James as a suspect of a domestic incident that occurred at 7761 NW 41 Street, Davie, Florida, which is in close proximity to the location where law enforcement found the suitcase.

9

***Additional Investigative Maters***

17. Law enforcement submitted multiple items seized from the residence, including the bed comforter on which the rape occurred, and the suitcase found on October 13, 2020 (see Paragraph 16) for DNA analysis. Results showed that James' DNA was present on a number of items, including the rim of a drinking glass, cigarette butts, and a Ziploc bag. Results also showed that Alexander-Wilcox's DNA was present on a number of items, including a different drinking glass, gloves found in the trash, the handle of the suitcase (see Paragraph 16), and the bed comforter on which the rape occurred. The DNA belonging to Alexander-Wilcox found on the bed comforter included sperm.

18. On or about December 12, 2020, Victim-2 contacted law enforcement and advised that Anthony's stepfather showed him a photograph of an individual that threatened Anthony. The individual depicted in the photograph and whose identifiers were present was James. Although Victim-2 advised that he was not certain that James was one of the three assailants, Victim-1 believed James' appearance was similar to one of the assailants.

***Kejuan Campbell, Antonio James, and Dionte Alexander-Wilcox***

<u>Familiarity with One Another</u>

19. Both James' and Campbell's social media accounts display photographs from 2018 and 2019 of them together. Alexander-Wilcox's social media accounts depict photographs of him and James together. On or about October 28, 2020, Alexander-Wilcox posted multiple images of himself in possession of firearms on his social media accounts. In one of these images, Campbell used his Instagram account to leave a comment.

### Contact with Anthony

20. Call detail records associated with Campbell's phone number show that, between October 11, 2020, and October 12, 2020, Campbell's phone made one hundred and twenty one (121) calls to a phone number subscribed to Anthony. With the exception of approximately seven (7) calls, each call lasted for ten seconds or less.

21. James' Facebook account depicted multiple photographs of him and Anthony together back in 2014 and 2015. In fact, Florida driver's license records identify 7753 Fairway Blvd, Miramar, Florida, as James' last known address. This is the same address that Anthony resided at and/or listed in 2014.

### Photographs with Firearms

22. On July 31, 2019, Campbell posted a photograph of himself holding what appears to be a firearm onto his Facebook account:



11

23. James' Facebook account also depicts photographs of him with what appears to be firearms:

 

24. Alexander-Wilcox's Instagram account depicts multiple photographs of himself possessing what appears to be firearms. In particular, on or about September 11, 2020, Alexander-Wilcox posted a photograph of himself holding a firearm that bore a serial number. The image itself appears below on the left while a close-up, mirror image of the serial number appears on the right:

[INTENTIONALLY LEFT BLANK]

| Original | Close-up, Mirror Image |
|---|---|
|  |  |

A Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") who is an expert in conducting nexus examinations of firearms reviewed the image of Alexander-Wilcox above and determined that the firearm is a Smith & Wesson firearm bearing serial number FBY7791. The ATF Special Agent then contacted Smith & Wesson, who confirmed that it did manufacture a firearm with that exact serial number and that the firearm – a Model SD9 VE, 9mm semiautomatic pistol – was manufactured in Massachusetts. A records check revealed that, prior to September 11, 2020, Alexander-Wilcox had previously been convicted of a crime punishable by imprisonment exceeding one year, that is, a felony offense. Because Alexander-Wilcox had previously served a term of imprisonment exceeding one year, he knew that he was a convicted felon at the time of his possession of the firearm.

## CONCLUSION

25. Your affiant believes that probable cause exists to find that KEJUAN CAMPBELL a/k/a "Splashzanoti" a/k/a "Splashzanotti," ANTONIO JAMES a/k/a "Yung Fokiss," and DIONTE ALEXANDER-WILCOX a/k/a "Dionte Alexander" a/k/a "Trapsavage45" committed violations of Title 18, United States Code, Sections 1201(c) (conspiracy to kidnap), and 1201(a)(1) and 2 (kidnapping). Your affiant also believes that probable cause exists to find that ALEXANDER-WILCOX committed a violation of Title 18, United States Code, Section 922(g)(1) (possession of a firearm by a convicted felon).

**FURTHER YOUR AFFIANT SAYETH NAUGHT**

_____
Special Agent Christopher Adam Goodrich
Federal Bureau of Investigation

Sworn to and subscribed before me by FACETIME
this 15th day of December, 2020.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

14